J-S12002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| S.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| L.W. | : | |
| | : | |
| Appellant | : | No. 1744 MDA 2018 |

Appeal from the Order Entered June 12, 2018
In the Court of Common Pleas of Centre County
Civil Division at No(s):  2013-3292

BEFORE:  BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:          **FILED: MAY 2, 2019**

L.W. ("Father") appeals from the June 12, 2018 custody order concerning his daughter, E.W., born in October of 2012.  Upon careful review, we affirm.

The relevant factual and procedural history is as follows.  Father resides in Centre County with his fiancée, C.S.  In contrast, S.W. ("Mother") lives approximately forty minutes away in Clearfield County, with her husband ("Stepfather"), their eighteen-month-old son, and their three-month-old daughter.

Father equated his relationship with Mother with "the Cold War as in there is not a whole lot of face-to-face battles but you have to constantly be prepared to jump under your desk."  N.T., 5/31/18, at 199-200.  Mother's characterization is less antagonistic: "I don't feel there's a level of conflict

[with Father]. I feel there's a lack of communication and a lack of willing[ness] to co[-]parent." *Id*. at 61.

In the fall of 2016, when E.W. had just turned four years old, the parties filed cross-petitions to modify the existing custody order, wherein they both requested primary physical custody. In anticipation of the custody proceedings, Father filed a petition for the appointment of a guardian *ad litem* ("GAL") "who can talk to the child and ascertain if either parent is making inappropriate statements to the child [about the other parent]." Petition, 2/14/17, at ¶ 6. Mother agreed to the appointment of a GAL, and on March 29, 2017, the trial court appointed Bobbie Rabuck, Esquire, as GAL and directed her to file a report and recommendation.

The GAL filed her report on October 19, 2017, wherein she recommended that Father have primary physical custody during the school year and that Mother exercise partial physical custody every weekend. During the summer months, the GAL recommended that the parties share physical custody on an alternating weekly basis. In addition, the GAL recommended, *inter alia*, that E.W. participate in counseling, and that Father and Mother engage in co-parenting counseling.

The custody trial occurred on May 31, 2018, when E.W. was five years old, and prior to her entering kindergarten. Mother testified and presented the testimony of Stepfather and L.Q., Stepfather's mother. Father countered by testifying on his own behalf and calling his fiancée, C.S., and the paternal

grandmother, N.W. The GAL was subjected to examination in relation to her report by both parties and the trial court.

The trial court announced its custody decision and delineated its best-interest analysis on the record in open court, and entered a written order on June 12, 2018. The court declined to follow the GAL's recommendation. Instead, it awarded Mother primary physical custody of E.W. during the school year and granted Father partial physical custody on alternating weekends and on Tuesdays and Thursdays from 4:30 p.m. to 7:00 p.m. During the summer, the parties were directed share physical custody on alternating weeks. The court also ordered that the parties engage in co-parenting counseling. In a separate parenting plan issued simultaneously with the custody order, the court held that the parties were to "facilitate the child's private individual counseling as may be recommended by the child's therapist[.]" Parenting Plan, 6/12/18, at ¶ 15.

Father timely filed a motion for reconsideration of the June 12, 2018 custody order. The trial court expressly granted Father's motion and, pursuant to Pa.R.A.P. 1701(b)(3)(ii), scheduled oral argument. Prior to the hearing, Father filed a request for additional testimony pursuant to Pa.R.C.P. 1930.2(e), which provides "If the court grants the motion for reconsideration and files its order within the 30-day appeal period, the court may issue an order during the applicable 120-day period directing that additional testimony be taken[.]" Specifically, Father petitioned that the court hear additional

testimony concerning Mother's "lack of candor" during the evidentiary hearing, Father's and Mother's respective school districts, and a recent incident between E.W. and Stepfather. Motion, 8/14/18, at ¶ 8(a)–(c). The trial court granted Father's request for supplemental testimony solely as to the alleged incident between E.W. and Stepfather.

At the ensuing evidentiary hearing, Father presented evidence that, during mother's custodial period, Stepfather slapped E.W. and clutched her with such force so as to leave handprints on her arms. He introduced two photographs that he claimed depicted the marks on E.W.'s arms. *Id*. at 6-7; *see also* Exhibit D-1. Father testified that, upon discovering the alleged abuse, Father took E.W. to the emergency room, where E.W. informed the doctor that the injury occurred while she was at Delgrosso's amusement park in Blair County with Mother and Stepfather. Father recalled her statement as, "they were going to leave or what not or go over to the water park[,] and [E.W.] wanted to get on a ride and [Stepfather] grabbed her and slapped her mouth." *Id*. at 8-9. Father also alleged that Mother subsequently encouraged E.W. to believe that she sustained the marks by falling off the trampoline at their house. *Id*. at 11-13, 29-30.

In his defense, Stepfather testified that he did not grab E.W. as a result of her desire to get on a ride in the amusement park. *Id*. at 47-48, 56. Rather, he explained that on one occasion at the amusement park, when E.W. was exiting the train ride that involves stepping over a gap, he held both of

her arms so that "she didn't fall. . . ." *Id*. at 48-49. He testified, "literally the rides [were] the only thing [that] I could come up with [to explain] how I would've put those [marks on E.W.'s arms] . . . ." *Id*. at 57.

Rebecca Claar, a caseworker from Blair County Children and Youth Services ("CYS"), testified that she investigated the incident and determined that it was unfounded for child abuse. *Id*. at 27-28. In addition, the GAL and Mother testified.

The trial court denied Father's motion for reconsideration, and Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). He presents the following issues for our review:

   I.    Did the trial court violate 23 Pa.C.S. § 5323(d) by failing to adequately delineate its reason for the custody award in a timely fashion?

   II.   Did the trial court commit an error of law or an abuse of discretion in limiting the additional testimony to be presented at the time of the reconsideration hearing?

   III.  Did the trial court commit an error of law and/or an abuse of discretion by failing to attach any weight to the [GAL]'s report?

   IV.   Did the trial court commit an error of law and/or an abuse of discretion in that its findings pursuant to 23 Pa.C.S. § 5328(a) (in determining the best interests of the child) were unreasonable and/or not supported by the record?

Father's brief at 6.

We review Father's issues according to the following scope and standard of review:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa.Super. 2001)).

Moreover,

on issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr.*, *supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa.Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa.Super. 2014). In addition,

the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer, supra* at 540 (Pa.Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.Super. 2004)).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa.Super. 2006).

The Child Custody Act ("Act"), 23 Pa.C.S. §§ 5321-5340, provides the following enumerated list of factors a trial court must consider in determining the best interests of a child when awarding any form of custody:

**§ 5328. Factors to consider when awarding custody.**

   **(a)** *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

   (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

   (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

   (2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

   (3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

This Court has stated that, "**All** of the factors listed in [§] 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). Further,

> [s]ection 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa.Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013).

*A.V.*, *supra* at 822-823. Moreover, this Court has stated, "[t]here is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa.Super. 2013).

In his first issue on appeal, Father argues that the court failed "to adequately and timely delineate its reasons for the custody award." Father's brief at 14. Father recites the trial court's findings made on the record in open court on June 1, 2018, but he asserts that the court "provided very little specifics as to various factors and how they weighed in the [c]ourt's determination." *Id*. at 15. Father states that the court adequately addressed the § 5328(a) custody factors in its Rule 1925(a) opinion, but that this was after the appeal deadline; therefore, he asserts that the court erred pursuant

to **C.B.**, **supra**. Father requests that we remand the case for further proceedings.

In **C.B.**, this Court interpreted § 5323(d) of the Act providing that trial courts "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S. § 5323(d). We stated, "Interpreting [§] 5323(d) in a manner that permits a trial court to delay addressing the Act's sixteen custody factors until the preparation of its Pa.R.A.P. 1925(a) opinion yields an absurd and unreasonable result." **C.B.**, **supra** at 953 (also stating, "Courts . . . must not interpret a statute in a manner that leads to an absurd result.") (citation omitted). We explained:

> Such an interpretation would leave litigants in the untenable position of having to navigate the initial stages of the appellate process blind. A custody litigant must first decide whether to appeal at all, a decision that involves potentially significant commitments of financial resources and time, as well as emotional and psychological stress. . . . Similarly, attorneys cannot intelligently advise their clients whether to pursue an appeal without first knowing how the court assessed the sixteen statutory factors in reaching its decision.

**Id**. Therefore, this Court held that § 5323(d) "requires the trial court to set forth its mandatory assessment of the sixteen factors prior to the deadline by which a litigant must file a notice of appeal." **Id**. at 955. We concluded:

> [T]he trial judge announced in open court "[t]wo of the key factors for me" which, along with "all the other factors," led him to his decision. N.T., 10/24/11, at 23. Then, in its Pa.R.A.P. 1925(a) opinion, the court addressed all of the sixteen factors prescribed by [§] 5328. Because the trial court complied substantially with the Act as it was interpreted prior to our decision today, and because [the appellant] has not demonstrated that any of her issues were forfeited by virtue of the trial court's approach in this

case, we discern no reason to remand this case to the trial court for further proceedings.

*Id*.

In this case, we reject Father's contention that the trial court failed to adequately detail its reasons for the custody award on the record in open court on June 1, 2018, within the appeal deadline. As discussed, *infra*, the court set forth its assessment of the relevant statutory factors. In addition, similar to the appellant in *C.B.*, Father does not allege or demonstrate that any of his issues was forfeited on appeal due to the asserted error by the court. Therefore, we need not remand this case for further proceedings.

Although, in addressing the factors, the court did not identify them by statutory citation, it discussed the factors using the key language provided in the statute for each of them. The hearing transcript reveals that the court found determinative § 5328(a)(1), which party is more likely to encourage and permit frequent and continuing contact between the child and another party, and § 5328(a)(13), the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. The court weighed both factors in Mother's favor. N.T., 6/1/18, at 302-03, 305-06.

The court explained that it "heard some testimony from the [custody] hearing" in February of 2015, and it found that Mother, more than Father, has "mov[ed] forward" and is not "stuck" where the parties were three years ago in their accusations against each other. *Id*. at 306. The court stated, "I heard a lot of evidence about Dad's need to document and photograph things

- 11 -

because of a fear of retaliation from Mom. I am not really sure where that comes from." *Id*. Further, the court found "very concerning" evidence regarding Father's failure to communicate his concern to Mother that a neighbor boy in Mother's neighborhood inappropriately touched E.W., and that Father explained his failure to communicate this to Mother as "that's just our relationship. . . ."[1] *Id*. at 302-03.

With respect to § 5328(a)(8), the attempts of a parent to turn the child against the other parent, the court rejected Father's allegations of alienation. *Id*. at 304-305. Stressing that Father's allegation is based on "what [E.W.] says," the court reasoned,

> [E.W. is] five. I'm not sure exactly how old she was when she was saying some of the things -- Daddy is a bad daddy, a mean daddy. . . . [W]ho knows where she might have gotten an idea like that. . . . You two have your own history. I understand that. I don't know what all of it is, and I don't need to know that because really the point is you need to move forward.

---

[1] Father acknowledged on cross-examination that, in August of 2017, he took E.W. to the doctor to learn if she had a urinary tract infection. N.T., 5/31/18, at 247-49. In doing so, he reported his concern to the doctor that an eleven-year-old boy in Mother's neighborhood inappropriately touched E.W. *Id*. at 248. Mother's counsel inquired whether he discussed this with Mother before taking E.W. to the doctor, and Father testified, "No, because we don't communicate. We're unable to co[-]parent." *Id*.

It is important to note there is no evidence in the record that E.W. was touched inappropriately by the neighbor boy or by any other person. Indeed, the GAL stated in her report that Centre County Children and Youth Services received a referral by telephone regarding Father's concern, but the call was "screened out" by the agency after speaking to Father and E.W.'s doctor. GAL report, 10/19/17, at 11.

So, . . . you have to get yourself to a place where you don't assume the worst in each other. . . .

*Id*. at 304-05.

The court found inapplicable § 5328(a)(2), (7),[2] and (14). Further, the court noted, "so many of th[e] [factors] are intertwined." *Id*. at 299. Moreover, "the evidence demonstrated that when [E.W.] is in either parent's care you both do an excellent job of caring for her." *Id*. In addition, the court observed, "the evidence showed that [E.W.] does very well with both of you." *Id*. at 300. It concluded that both parties "attend to [E.W.'s] needs" and that their households provide stability in her family and community life. *Id*. at 301, 305.

In addition, the court weighed equally between the parties § 5328(a)(5), the availability of extended family, the court found that evidence exists "about extended family on both sides. . . . [O]bviously, [E.W.] has love and support all around her." *Id*. at 307.

With respect to § 5328(a)(6), the child's sibling relationships, the court stated, "I . . . heard a lot about the sibling relationships. They seem to be wonderful. I know that Dad plans to grow his family as well, and I hope and

---

[2] There is no evidence in the record with respect to § 5328(a)(7), the well-reasoned preference of the child, based on the child's maturity and judgment. The court did not interview E.W. *in camera*, and no witness testified regarding her preference.

- 13 -

have every reason to believe that [E.W.] will have those same relationships [with Father's future children, if any]." *Id*.

Finally, the trial court addressed the GAL's testimony and recommendations that, during the school year, Father be awarded primary physical custody and Mother partial physical custody, and that the parties share physical custody on an alternating weekly basis during the summer.[3] The court concluded:

> I did hear from the [GAL] about her observations of the way [E.W.] expresses herself differently in each home setting. But in the context of everything else I have heard, that just tells me that she expresses different parts of herself differently with each parent. I don't see anything inappropriate about that or that lends me to think . . . she's more comfortable one place than another.

N.T., 6/1/18, at 303-304.

Based on the foregoing, we conclude that the trial court adequately addressed the § 5328(a) factors on the record in open court before the expiration of the appeal deadline. The court set forth its factual findings in light of the custody factors and emphasized those it found significant. The court concluded that Father is less capable than Mother of co-parenting, to

---

[3] The GAL testified that her recommendation was influenced by the differences in E.W.'s level of interaction and demeanor in Father's and Mother's homes. Specifically, the GAL testified that she visited E.W. on two occasions in both households. In Father's home, E.W. engaged with her and was "very assertive." *N.T.* 5/31/18, at 274. The GAL testified she "had a lovely interaction" with E.W. *Id*. In contrast, in Mother's home, the GAL testified that E.W. was "a completely reserved child who would barely even kind of acknowledge I was there." *Id*.

the detriment of E.W. ***See M.J.M.***, ***supra*** at 336 ("There is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations."). Father's first issue fails.

In his second issue, Father argues that the trial court committed an abuse of discretion and/or error of law during the October 4, 2018 reconsideration hearing by prohibiting additional testimony regarding "the issue of credibility of [M]other or the respective school districts." Father's brief at 19. As discussed above, the trial court granted Father's request for additional testimony solely as to the alleged incident between E.W. and Stepfather, and when Father attempted to introduce evidence on a different point during the hearing, the trial court sustained Mother's objection.

The decision to re-open the record for additional testimony following the grant of reconsideration is a matter of the trial court's discretion. ***See*** Pa.R.C.P. 1930.2(e) ("If the court grants the motion for reconsideration. . . it may . . . issue an order directing that additional testimony be taken."); ***see also Middleton v. Middleton***, 812 A.2d 1241, 1246-47 (Pa.Super 2002) (*en banc*) ("There is no requirement . . . that mandates additional evidence before the trial court undertakes reconsideration of its order.").

Instantly, the trial court limited the testimony at the reconsideration hearing in order to streamline that proceeding and to focus on Father's novel allegation that Stepfather abused E.W. physically. The court reasoned,

- 15 -

[T]he [trial] [c]ourt granted Father's request for additional testimony as [it] pertained to an incident of abuse that allegedly occurred subsequent to the full day custody [trial]. Permitting Father to reopen the record to present additional evidence regarding issues he had ample time to prepare for and address, including credibility challenges, would only encourage litigious behavior and the unnecessary expenditure of resources, further delay resolution of the [p]arties' custody dispute, and deprive [E.W.] of the stability that comes with a final custody decision.

Trial Court Opinion, 11/26/18, at 12. We discern no abuse of discretion. ***See*** Pa.R.C.P. 1915.4, **Prompt Disposition of Custody Cases** cmt—2000 (prompt resolution of custody disputes serves best interests of children and delays should not be lightly countenanced). As the trial court acted with discretion in framing the scope of the evidentiary hearing pursuant to Rule 1930.2(e), no relief is due.

In his third issue, Father asserts that the trial court erred by failing "to discuss or provide any weight to the GAL's [r]eport." Father's brief at 21. Father's issue is interrelated to his fourth issue insofar as he contends that the record evidence does not support the physical custody award during the school year. Therefore, he asserts that the court abused its discretion in fashioning the subject order.

Contrary to Father's assertion, the trial court addressed the GAL's testimony on the record in open court on June 1, 2018. As discussed above, the GAL based her recommendation for physical custody during the school year on her observation that E.W. was less reserved in Father's home than in Mother's home, which made for a better interaction between the GAL and E.W.

in Father's home. The court rejected this basis for the GAL's recommendation. Specifically, as previously noted, the court determined that any variance that the GAL observed in E.W.'s expressiveness in the respective homes did not bear upon which home suited her more. N.T., 6/1/18, at 303-04.

Further, the subject custody order was consistent with the GAL's recommendations insofar as it provided for shared physical custody during the summer on an alternating weekly basis, for Father and Mother to engage in co-parenting counseling, and for E.W. to participate in counseling. Upon careful review, we conclude that the trial court performed its duty to determine the facts and apply those facts to the law. *See C.W.*, *v. K.A.W*., 774 A.2d 745, 749 (Pa.Super. 2001) ("In a non-jury trial such as this, the role of the judge is to interpret the law, determine the facts and apply the facts to the law for an eventual decision of the controversy."). We discern no abuse of discretion by the court in ascertaining the best interests of E.W. during the school year, contrary to the recommendation of the GAL. Father's third issue fails.

In his fourth issue, Father argues that the court abused its discretion in assessing the custody factors with respect to its physical custody award during the school year. Specifically, Father argues that the court abused its discretion with respect to § 5328(a)(1), (2), (2.1), (4), (8)-(10), and (13), as set forth in its Rule 1925(a) opinion. For the reasons discussed *infra*, this claim fails.

The court found § 5328(a)(1) among the determinative factors and concluded that Mother is more likely than Father to engage and facilitate frequent and continuing contact, and a meaningful relationship, with E.W. and the other parent. The court cited Mother's testimony that she willingly moved her wedding date so that Father could take E.W. on a planned vacation. As outlined, *supra*, the certified record supports the court's findings. **See** N.T., 5/31/18, at 9, 27-28. Further, the court noted Mother's testimony that she has driven E.W. to the their custody exchange meeting location, which is a driving distance of approximately twenty minutes, to permit E.W. to say goodbye to Father, which lasted only approximately five minutes, due to Father's departure for extended National Guard duty.[4] The record supports this finding as well. **Id**. at 39-40.

Moreover, in addressing § 5328(a)(1), the court concluded, "Father has a tendency to avoid responsibility for his role in the tensions between the [p]arties and the custody disagreements that arise from time to time, and to place the blame completely on Mother. This interferes with his ability to co-parent and encourage the [c]hild's relationship with Mother." Trial Court Opinion, at 11/26/18, at 4. The court explained:

> In asserting that Mother does not encourage a relationship between Father and [E.W.], Father gave examples of desiring to switch custodial days so that he could have the child on Father's

---

[4] The certified record reveals that Father is in the National Guard, which requires him to serve one weekend every month and two to three weeks every spring or summer. N.T., 5/31/18, at 13.

Day, not even bothering to ask Mother because he thought she would not agree. He also testified about a time when he initially told Mother he would be unavailable for his Father's Day custody time due to military training [involving the National Guard], such that custody would be with Mother for that time. Mother scheduled a vacation with [E.W.] during that period. Father's military schedule subsequently changed, and he asked to have custody of [E.W.] for Father's Day. Father felt it unreasonable that Mother refused to change her vacation at the last minute to accommodate him.

Trial Court Opinion, 11/26/18, at 3. The certified record confirms the court's findings. N.T., 5/31/18, at 36-40.

Father's present allegation that Mother is unsupportive of his relationship with E.W. relates to Father's Day of 2015. The timing tends to uphold the court's overall conclusion that Mother, more than Father, has "mov[ed] forward" and is not "stuck" where the parties were three years ago in their accusations against each other. N.T., 6/1/18, at 306. In addition, Father cites Mother's testimony from the February 13, 2015 custody hearing, which he maintains demonstrates that Mother believes that he does not love E.W., and that he "is a control freak." Father's brief at 27-28; **see also** N.T., 5/31/18, at 76-84.

In response, the trial court stated in its Rule 1925(a) opinion that it "did not find the testimony, given more than three years prior [to the subject proceeding,] and much closer in time to the [p]arties' breakup, to be very persuasive on these points." Trial Court Opinion, 11/26/18, at 3. The court explained:

- 19 -

> The [c]ourt accepted that Mother and Father mistreated one another in the past, and that their unhealthy relationship and conduct toward one another undoubtedly impacted [E.W.]. Although it is clear the [p]arties continue to have difficulty communicating and a troubled relationship, the evidence over all demonstrated some progress toward co-parenting since the initial custody hearing in 2015. . . . Mother's testimony at the May 31, 2018 hearing showed a change in attitude since the time of the prior custody hearing, as did her conduct as highlighted at the 2018 hearing.

*Id*.

The certified record ratifies the court's findings in favor of Mother in this regard. Specifically, concerning Father's assertion that Mother believes he does not love E.W., Mother testified that she no longer holds that belief. N.T., 5/31/18, at 83. Likewise, as it relates to Father's control issues, the testimony of both parties lends credence to the court's finding that Father tries to maintain control at "certain points" in their shared custody of E.W. We discern no abuse of discretion by the court regarding § 5328(a)(1). ***See A.V.***, ***supra*** at 820 ("[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.") (citation omitted).

We next turn to § 5328(a)(2), the present and past abuse committed by a party or member of the party's household, and (2.1), the information set forth in § 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services). Father argues that the court abused its discretion in its credibility determinations in favor of Mother and Stepfather

and against Father regarding the marks on E.W.'s arms. In its Rule 1925(a) opinion, the court explained:

> This incident allegedly occurred just before Father took [E.W.] on vacation that day. There was no emergency custody petition filed in connection with the incident, and the issue was not raised in the instant litigation until August 14, 2018, the date initially scheduled for argument on Father's petition for reconsideration[.]
>
> The [c]ourt scheduled a hearing for October 4, 2018 to address the alleged abuse issue only. Evidence presented at the hearing on reconsideration established that this issue was thoroughly investigated by Blair County Children and Youth Services and the allegation was determined to be unfounded due to a lack of any substantial injury. Father, Mother and Stepfather all testified at the hearing. Mother and Stepfather denied any incidents of abuse had occurred, and denied allegations by Father that they had encouraged [E.W.] to lie about how she incurred bruises on her arm. The [c]ourt found Mother and Stepfather's testimony credible.

Trial Court Opinion, 11/26/18, at 4. Upon careful review, we conclude that the certified record sustains the court's credibility findings in favor of Mother and Stepfather. N.T., 10/4/18, 5-23, 25-39, 47-59, 59-77. Accordingly, we do not disturb it. *See A.V.*, *supra* at 820.

With respect to § 5328(a)(4), the need for stability and continuity in the child's education, family life, and community life, the court weighed this factor equally between the parties. Father argues that the court abused its discretion by not weighing this factor in his favor because of E.W.'s relationship with her paternal grandparents, E.W.'s participation in the choir at her paternal grandmother's church, Father's practice of praying with E.W., Father enrolling E.W. in a horseback riding lesson, and E.W. playing the piano with her paternal

grandmother.[5]   Father fails to demonstrate that E.W. will not be able to participate in these activities while in his partial physical custody during the school year.

In its Rule 1925(a) opinion, the trial court observed that both Father and Mother "contribute to stability for [E.W.] when she is in their care.  [E.W.] participates in community life and family life with both parents, *albeit* in separate communities and with separate families."   Trial Court Opinion, 11/26/18, at 5.   The court found that Stepfather and Father's fiancée have been in E.W.'s life since she was approximately two years old, and that she has a good relationship with both of them.   *Id*.   The court also stated that E.W. attends church with both parties, and that she spends time with both extended families.   *Id*.   The court's findings regarding § 5328(a)(4) are supported in their entirety by the testimony of all of the witnesses in this case.

With respect to § 5328(a)(8), the attempts of a parent to turn the child against the other parent, Father asserts as follows, in part:

> [M]other's opinion related to [F]ather at a prior hearing in February of 2015 (whereafter [F]ather was granted joint physical custody) clearly illustrates that [M]other believed that [F]ather had no quality as a father.  Despite the fact that this was in February of 2015, it is relevant, given the fact that there was testimony to establish that [M]other was likely harboring some of these same feelings related to [F]ather, given the fact that the child was coming back from [M]other's residence indicating that

---

[5] Father testified, "I had [E.W.] have a horse riding lesson."  N.T., 5/31/18, at 212.  In addition, Father did not testify that E.W. takes piano lessons, but that his mother "is an excellent pianist. . . .   She plays with [E.W.] on the piano." *Id*. at 209.

[F]ather was a "bad daddy" and that [M]other still believed that [F]ather was a control freak.

Father's brief at 31 (citations to record omitted). In addition, Father asserts that E.W. refers to him by his first name. Father argues that the court abused its discretion by finding Mother credible that she corrects the child for identifying Father by name.

The trial court explained as follows:

The [c]ourt did not find credible evidence that either [p]arent engaged in conduct with the deliberate intent of alienating the other [p]arent. Father testified that [E.W.] told him that Mother told [E.W.] he was a "mean daddy." It was not clear what timeframe Father's testimony was referencing, and Father did not describe the precise circumstances, making it difficult for the [c]ourt to assess this hearsay statement attributed to [E.W.]. Mother denied having ever told [E.W.] that Father was a "mean" or "bad" daddy. There was no indication from the GAL's testimony of an issue in this regard.

There was evidence that [E.W.] refers to Father by his first name, rather than "dad or daddy," and that she calls Stepfather "daddy." The [c]ourt agrees this is not appropriate, and that Mother needs to be part of the solution to remedy the situation. It was not clear whether [E.W.] addressing Father and Stepfather in this manner was due to confusion on the part of [E.W.], or some other factor. The court notes that [E.W.]'s siblings are the biological children of Stepfather, and that in Father's family, [p]aternal grandmother is referred to by her first name, even by Father. The [c]ourt credited testimony by Mother that she corrects [E.W.] and reinforces that [Stepfather] is her stepfather and that Father is her dad.

Trial Court Opinion, 11/26/18, at 7. The certified record confirms the court's finding that neither Mother nor Father sought to alienate E.W. from the other.

N.T. 5/31/18, at 74-75, 87, 96-97.

As such, we discern no abuse of discretion by the court with respect to § 5328(a)(8).

Regarding § 5328(a)(9), which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child adequate for the child's emotional needs, and (a)(10), which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the child, Father asserts that the trial court abused its discretion in weighing them in favor of Mother. The court explained, "The evidence regarding these factors was interwoven. Both parents have a loving and nurturing relationship with [E.W.]." Trial Court Opinion, 11/26/18, at 7. However, the court specifically opined, "looking at the evidence as a whole, the [c]ourt concluded that Father is at times guided by his negative impression of Mother and his need to exert control than his concern for [E.W.]'s best interest and overall welfare." *Id*. at 8.

The court referenced Father's testimony, discussed above, regarding his failure to inform Mother of his concern regarding the neighbor boy inappropriately touching E.W. The court found that this was a "very significant issue." *Id*. It reasoned,

> that Father's failure to communicate a concern of such a grave nature to Mother and to inform her of his concern about a potential significant threat to [E.W.]'s safety and well-being, shows an inability on Father's part to make [E.W.]'s welfare paramount when it comes to the issue of communicating with Mother. Father's demeanor in testifying about the subject further demonstrated his lack of appreciation of the issue.

- 24 -

*Id*.  In short, the court ruled that the parties "will be required to increase their level of cooperation to allow room for [E.W.] to grow and develop socially and emotionally, as well as in all other aspects of life.  The court concluded that Mother's conduct, and her testimony and demeanor, shows she is more equipped to do this at present than Father." *Id*. at 9.

With respect to § 5328(a)(9) and (10), Father's assertions are based on the court's credibility findings in favor of Mother and against Father.  As credibility determinations are within the ambit of the factfinder and because the certified record verifies the trial court's findings, we will not disturb them. *See A.V.*, *supra* at 820.

Finally, Father challenges the court's analysis concerning § 5328(a)(13), the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  This factor weighed in favor of Mother. The court reasoned

> that the evidence showed Mother demonstrates greater ability than Father to put aside their differences for the sake of co-parenting [E.W.].  By and large, Mother has acceded to Father's desire the communication between them be by email.  In addition, testimony demonstrates that Mother seeks Father's input before making decisions on issues such as preschool enrollment and activities, but that Father does not. . . .  Father also unilaterally enrolled [E.W.] in a preschool program offered by the YMCA (where she was attending daycare when in Father's custody), despite having denied consent to Mother when she asked about enrolling the [c]hild in preschool in Mother's home area.

Trial Court Opinion, 11/26/18, at 10.  Again, our review of the certified record corroborates the court's findings.  *See* N.T., 5/31/18, at 184, 237-38;

- 25 -

N.T.6/1/18, at 15-20. Accordingly, we discern no abuse of discretion regarding the court's assessment of § 5328(a)(13).

For all of the foregoing reasons, the trial court did not abuse its discretion in awarding Mother primary physical custody of E.W. during the school year. The court carefully considered E.W.'s best interests and entered its order accordingly.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/2/2019